McKinney, J.,
delivered the opinion of the Court.
*252 This was an action of assumpsit, against the makers and indorsers of a promissory note, made by Oastellaw & Marley, payable to William G. Swan, the plaintiff in error, and indorsed by him for the accommodation of the makers ; and in like manner indorsed by John Williams and J. L. Dixon.
Judgment was rendered in favor of Williams and Dixon, and against Swan, jointly with the makers. Swan, alone, prosecuted an appeal in error.
The note was for $2,000, payable four months after date at the Branch of the Union Bank at Knoxville, and it matured on the 15th of September, 1857 — that being the last day of grace. No sufficient demand of payment Avas made, or notice of the dishonor of the note, given to the indorsers. It is true, there is set forth in the bill of exceptions AYliat purports to be a regular protest of the note; together with a certificate of the notary, that he gave due notice to the indorsers, of the dishonor of the note. But, by agreement of the parties, the statement of the notary, in regard to the time and manner of the demand of payment, and notice to the indorsers, A?as received as evidence to the jury. The notary states, that on the last day of grace, namely, the 15th of September, 1857, after banking houis, the note Avas placed in his hands, by Hodges, for the purpose of presentment for payment. That on his Avay to the bank, he satv Mr. Campbell, the teller and acting cashier of the bank, at the Avindow of one of the offices in the courthouse ; and then and there, without going to the bank, made demand of payment of the note of him ; and was ansAvered, that no funds ha.d been provided for the payment thereof. Supposing this to be sufficient, the notary, on the same day, delivered a Avritten notice to Swan, and the other indorsers, informing them, respectively, that the note had been duly protested, on that day, for non-payment.
It is clear that this demand Avas not sufficient to charge the indorsers. Presentment for payment must be made Avithin reasonable hours during the day, and should be made during the usual hours of business. Business hours, hoAvever, except in the case of banks, include the whole day, unless there be *253 some known custom or usage of trade to the contrary. And as the general usage of hanks is, to limit their business transactions to certain hours, a presentment, or demand, out of banking hours, is not sufficient. Byles on Bills, (Ed. of 1856,) 278, top. Story on Prom. Notes, 226.
Such is the weight of authority, though there are some American cases at variance with the rule as above stated. See Byles on Bills, 278, note 1.
It was conceded, on the trial in the Circuit Court, that the note was not duly dishonored; and on this ground the two last indorsers were held to be discharged. But as to Swan, it was held, that there had been a waiver of demand and notice, by force of an indemnity alleged to have been taken from the makers, by him.
It appears that a deed of trust was executed by Castellaw & Marley, by which they assigned certain property and effects, therein described, to J. C. Ramsey, as trustee. It is recited in the deed, that William Gr. Swan was the accommodation in-dorser, for the makers of said deed, of three several notes, one of which is the note sued on; and in describing said note it is stated, that it “ became due yetesrday and was protested.”
The trustee is required to proceed forthwith to make sale of the property, and to collect the debts assigned to him, “ with a view to pay up and discharge the liabilities of the said Cas-tellaw & Marley above mentioned, indorsed as hereinbefore stated, by the said Wm. G. Swan.”
It appears that the assignment was made at the instance, and with the approbation of Swan, and that he was present when the deed was executed.
The deed bears date the fifteenth day of September, 1857 — ■ the same day on -which the note was payable — but it is manifest from the whole case, that it was not executed or delivered until the day after. It w'as not acknowledged until the 16th, although all the parties resided in Knoxville. In the heading of the trustee’s account of the administration of the trust, it is stated that his appointment as trustee, was on the sixteenth. *254 But upon the face of the deed this question is put to rest. The recital — that the note “became due yesterday, and was protested,” being repugnant to the date, must prevail, The date is not an essential part of a deed. The deed will be good although it have no date, or a false or impossible date; and will take effect from the time of delivery. 2 Bl. Com., 304. The date may, therefore, be rejected whenever it differs from the real time of delivery. But the positive statement of the matter of fact, in the body of the instrument, that the note fell due and was protested on the day preceding the making of the deed, cannot be thus treated; and it must be taken as conclusive of the fact, that the assignment was not made until the day after the note was payable.
And this brings us to the question, whether or not Swan’s acceptance of this assignment amounts to a waiver of demand and notice. The principle is well settled, that if the indorser, before, or at the maturity of the note, has protected himself from loss, by taking adequate collateral security, or by accepting an assignment of all the maker’s property — though it be inadequate to meet the liability upon the indorsement — it is a waiver of the legal right of the indorser to require proof of demand and notice. Story on Pr. Notes, secs. 281, 282: 2 Greenl. Ev., sec. 190.
But it seems to be equally well settled, that the taking of a security or indemnity by an indorser, 'after the note has become due, under a mistaken impression or belief, that he is legally bound to pay the note, will not bind him, if there has not been a due presentment and notice of the dishonor. And this is upon the principle, that a subsequent promise to pay the note, under a mistaken belief that the indorser’s liability had been fixed by the due dishonor of the paper, would not bind him. And no where has this doctrine been more strongly enforced than by this Court. In the case of Spurlock v. Union Bank, 4 Hum., 336, it is said, that if the promise, by an indorser, be made under a mistake or misapprehension, either as to the law, or the facts, in respect to his liability, the promise will not *255 bind him. 2 Hum., 559. And so, in the case of accepting an indemnity, after the maturity of the note, under the mistaken belief that his liability had been properly fixed by the due dishonor of the note. It cannot, in such case, sa.ys Mr. Story? justly be inferred that he meant, at all events, to make himself liable for the payment of the note ; but he takes the security merely as contingent security, in case of his liability. Story on Pr. Notes, 278, 282; 2 Greenl. on Ev., sec. 190.
Applying these principles to the present case, it is clear that Swan cannot be held liable on the ground of his acceptance of the assignment. It is fully established, that he accepted the security under an impression that his liability as indorser had become fixed by the dishonor of the note. He was misled by the notice of the dishonor of the paper, served on him by the notary on the day the note matured; and acted upon the assumption that the note had been dishonored, and his liability fixed, when the facts were otherwise, and his liability was entirely discharged.
There is great force in the argument that, in general, the indorser’s knowledge of the fact of the want of due diligence on the part of the holder, may be reasonably inferred as a fact, from his voluntary subsequent promise to pay, or his taking an assignment for his indemnity. 3 Kent’s Com., (Ed. of 1851,) 147-8, top. This would probably be so, in the absence of anything sufficient to repel such inference. But, in the present case, this presumption of knowledge on the part of Swan, is effectually repelled by the official act of the notary, certyfying the fact of the due protest of the note for non-payment ; which, though not true in fact, Swan was warranted to take as true; and there is nothing whatever in the record to show that he did not act under the belief, in taking the assignment, that the note had been duly dishonored; nor is there anything from which it can be inferred that he intended to assume any liability other than that created by his original contract of indorsement.
According to all the authorities to which we have had ac *256 cess, the acceptance of the assignment, under such circumstances, cannot he held a waiver of demand and notice.
The question as to the right of Hodges, the indorsee, to ■avail himself of the security thus taken by the indorser for the payment of the note, is not before us.
Judgment reversed,